IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 20-131-BLG-SPW |
| Plaintiff/Respondent, | |
| vs. | ORDER |
| ANTOINE ROBERT THREEFINGERS, | |
| Defendant/Movant. | |

Antione Robert Threefingers ("Threefingers"), through counsel, seeks an order disqualifying the United States Attorney's Office for the District of Montana from this matter. Alternatively, Threefingers requests that Assistant United States Attorneys Bryan Dake ("Dake") and Kelsey Sabol ("Sabol") be disqualified and that the United States Attorney's Office implement an ethical wall or screen to ensure they are precluded from further participation. *See generally*, (Doc. 156). The Government opposes the motion. (Doc.158.)

**Background**

Threefingers filed a motion to vacate pursuant to 28 U.S.C. §2255. (Doc. 124.) Nancy Schwartz ("Schwartz") was appointed to represent Threefingers and filed an amended motion on his behalf. *See e.g.*, (Docs. 131 & 142.) The Government was directed to respond to the motion. (Doc. 146.) The Court's order

1

detailed that trial counsel Evangelo Arvanetes's ("Arvanetes") and Mark Werner's ("Werner") duty of confidentiality to Threefingers was waived solely for formal proceedings in this matter. The order outlined parameters for discovery and depositions, noting that "Arvanetes/Werner may discuss the case with either party only in the presence of counsel for the opposing party." (*Id.* at 2.)

On September 5, 2025, Dake emailed Arvanetes and requested a time to schedule a phone call in order to "generally" discuss the 2255 motion that had been filed. *See,* (Doc. 158-1 at 1.) Dake states that the purpose of this communication was to ascertain Arvanetes's availability for a deposition. (Doc. 158 at 3.) Apparently the phone call that was discussed in the e-mail did not subsequently occur. (*Id.*)

On September 11, 2025, Dake and Arvanetes talked briefly on the phone. Dake cannot recall who initiated the conversation but remembers the focus of the call was finding an acceptable date for Arvanetes's deposition. (*Id.* at 3-4.) Dake believes he may have provided an overview of the claims raised in Threefingers' 2255 motion, which was publicly filed and available for review, but indicates he did not discuss the substance of any claims in detail with Arvanetes. Dake does not believe any privileged information was discussed and relays that this conversation was the only one that he had with Arvanetes regarding Threefingers' 2255 motion. (*Id.* at 4.)

Following the phone call, Dake e-mailed Threefingers' prior 2255 counsel, Schwartz, and advised based on the conversation with Arvanetes earlier that day, that it did not seem possible to schedule a deposition of Arvanetes until the end of November or beginning of December 2025. Dake also asked if Schwartz objected to the Government's request for a 90-day extension for their response deadline. *See*, (Doc. 158-2.) In response, Schwartz indicated that the proposed deposition dates worked for her and that she had no objection to a continuance. Dake advised Schwartz that the Government would work on setting up discovery and was considering also deposing trial counsel Werner. *See*, (Doc. 158-4.) There is no indication from the documents provided that Schwartz was uncomfortable with Dake e-mailing Arvanetes, nor did she inquire as to the substance of their conversation.

Between the correspondence of Dake and Schwartz, Arvanetes sent Dake an e-mail about Threefingers' §2255 motion. *See*, (Doc. 158-3.) Arvanetes referenced a prior discussion with Dake. In the e-mail Arvanetes referenced the "two main" issues he identified in Threefingers' 2255 motion. (*Id*. at 2.) Arvanetes offered some brief insights into both issues. (*Id*. at 2-3.) He then inquired of Dake as to what he should do to prepare for the deposition and indicated he had only been deposed once before. Arvanetes noted that in his prior

deposition he did not do much to prepare, that he simply told the truth, and advised the parties as to what he did or did not remember. (*Id.* at 3.)

Dake did not pursue any further inquiry into Arvanetes's views regarding the substance of Threefingers' 2255 claims in his reply e-mail. He advised Arvanetes that the Government was awaiting a response from Schwartz regarding scheduling the deposition. (*Id.* at 2.) Dake also stated that in preparing for the deposition, Arvanetes may want to review his files. Dake indicated that the Government might want to meet with Arvanetes prior to the deposition, but that they would "cross that bridge" when they got there. Additionally, Dake thanked Arvanetes for providing the Government contact information for Werner. (*Id.*)

It does not appear that any further communications occurred between the Government and Arvanetes in the intervening months. In January of 2026, Dake communicated with Schwartz regarding scheduling depositions. *See*, (Doc. 158-5.) On January 12, 2026, Dake received a second e-mail from Arvanetes. In the e-mail, Arvanetes indicated he had re-read Threefingers' amended §2255 motion and reiterated the general thoughts he had provided in the prior e-mail. A review of the correspondence does not show that Dake and Arvanetes had been in communication regarding Threefingers' case. Dake notes that he did not respond to the e-mail, nor did he meet or call Arvanetes to engage in any further discussion. (Doc. 158 at 6.)

4

On January 21, 2026, Dake sent an e-mail to Schwartz and Arvanetes advising that the deposition of Arvanetes had been scheduled for February 13, 2026. (Doc. 158-7.)

On January 22, 2026, Arvanetes sent a third e-mail to Dake and Sabol. In it, Arvanetes asked if they planned on meeting to prepare prior to the deposition. Arvanetes indicated again that he had only been deposed one time before and did not recall exactly how the process unfolded; he expressed some discomfort with the process and that possibly going over questions before hand might be a good idea. (Doc. 158-8 at 2.) In response, Dake indicated that Sabol had pointed out language in this Court's order, cited above, that "Arvanetes/Werner may discuss the case with either party only in the presence of counsel for the opposing party." In light of the language, Dake advised Arvanetes that the Government would not be conducting any deposition preparation without Schwartz present. (*Id.* at 1.) Arvanetes's response indicated his understanding of the order and his intent to participate and assist in the process. (*Id.*)

On February 6, 2026, Dake, Sabol, Schwartz, and Arvanetes communicated via e-mail regarding the upcoming deposition. (Doc. 158-9.) Dake suggested materials that may be helpful for Arvanetes to review prior to the deposition. (*Id.* at 2.) Additionally, Dake advised Arvanetes that the Government could prepare a

subpoena for Arvanetes's records in order to facilitate a copy of documents being provided to the parties, but that no subpoena had yet issued. (*Id.* at 1.)

Later that same day, Dake sent an e-mail to Schwartz advising her that he was not sure what the Government's obligation was regarding communications he had received from Arvanetes, but "in an abundance of caution" he was providing Schwartz with the e-mails that he had received from Arvanetes in the preceding six months. (Doc. 158-10.)

On February 11, 2026, Schwarz moved to withdraw as Threefingers' counsel and was replaced by current 2255 counsel. (Docs. 152 & 153.)

**Analysis**

Threefingers argues that the entire United States Attorney's Office for the District of Montana should be disqualified from this matter. Threefingers acknowledges that this is an "extreme remedy" but believes it is appropriate as the actions of the prosecutors involved have interfered with the attorney client relationship and resulted in the disclosure of protected information. (Doc. 156 at 7-8.) Threefingers argues that the United States Attorney's Office disregarded this Court's order, disclosed confidential information, and in so doing prejudiced Threefingers. (*Id.* at 8.) Accordingly, Threefingers believes the appropriate remedy is disqualification of the entire office and appointment of a neutral prosecuting office to represent the Government, in order to avoid the disparity of

6

the government benefitting from the confidential and protected information it improperly obtained. (*Id.*)

It is true that courts may disqualify prosecutors when their participation would be "a violation of ... the Constitution, a federal statute, or a procedural rule." *United States v. Jennings*, 960 F.2d 1488, 1491 (9th Cir. 1992). Threefingers suggests that the present matter is distinct from *United States v. Williams*, 68 F. 4th 564, 573 (9th Cir. 2023), where the Ninth Circuit determined that disqualification of the entire 180-attorney U.S. Attorney's Office in Arizona, based upon the wrongdoing of a single attorney, was not justified. (Doc. 156 a t8-9.) Threefingers argues that given the relatively small size of the Montana U.S. Attorney's Office and the "obvious" camaraderie between Arvanetes and the AUSA's within the office, an ethical screen would likely be impractical and ineffective. (*Id.* at 9.)

The Government responds that, at worst, it failed to disclose "the exact statements made in a brief logistical telephone call or timely provide two unsolicited emails from [Arvanetes] to [Schwartz]." (Doc. 158 at 9-10.) The Government further argues that the e-mails from Arvanetes were not requested by counsel, were not substantively engaged with by counsel, and were forwarded to Schwartz prior to the scheduled deposition. Additionally, there was nothing of substance gained from the 9/11/25 phone call with Arvanetes and Schwartz was made aware of the call the same day it occurred. The Government points out that

7

there were no additional calls, e-mails, or meetings between the U.S. Attorney's Office and Arvanetes and that Threefingers' supposition that such unauthorized communication must have occurred is unfounded. (*Id.* at 10.) Furthermore, the Government argues there was no prejudice because Threefingers and his current counsel has been made aware of the entirety of the communications that transpired with trial counsel.

"Disqualification of an entire U.S. Attorney's Office is an extreme remedy-only appropriate in the most extraordinary circumstances." *Williams*, 68 F. 4th at 573. In *United States v. Worman*, the Idaho District Court summarized the two-part disqualification test outlined in *Williams* as follows:

> First, a district court must find a strong factual predicate for blanket disqualification. Second, a district court must determine that the U.S. Attorney's Office's continued representation of the government will result in a legal or ethical violation. To reach such a conclusion, the Court must also determine that any conflict "so pervades the office that less intrusive remedies would be inadequate to safeguard against a legal violation."

*U.S. v. Worman*, No. 2:23-CR-00136-DCN-1, 2024 WL 3401069, at *2 (D. Idaho July 12, 2024)(*citing Williams*, 68 F. 4th at 573).

A district court may only order a blanket disqualification after making these "exacting findings"; it may not "disqualify an entire office of federal prosecutors merely as a precautionary measure." *Williams,* 68 F. 4th at 573-74. The Ninth Circuit has warned against the "risk of offending separation-of-powers principles when disqualifying an entire office of Executive branch attorneys." *Id.* at 572.

Because of this risk, "[s]uch sweeping interference is seldom warranted. Indeed, every circuit court that has reviewed an officewide disqualification has reversed." *Id.*

Threefingers filed the motion to disqualify, accordingly the burden of proof to provide an adequate basis to support disqualification is upon him. As noted by the district court in *Worman*, that burden is "particularly heavy" given the exacting two-part disqualification test set forth in *Williams*. *Worman*, 2024 WL 3401069, at *2. Threefingers has not met his burden in the instant case.

The Court finds that the e-mails at issue, which Arvanetes sent to Dake, were, in fact, unsolicited. Further, it does not appear that Dake took any affirmative steps to follow up on the information provided in order to glean a tactical advantage in these proceedings. Threefingers' suggestion that additional communication and/or meetings must have occurred between Arvanetes and Dake, which are not reflected in the record, based upon Arvanetes's comment in an e-mail that it was "good talking last week," is unfounded. Rather, as the Court reads the exchange, it appears that Arvanetes was referencing the 9/11/25 scheduling phone call, of which Schwartz was aware. Or put another way, this does not evidence any unusual or distinct "camaraderie" between Arvanetes and the U.S. Attorney's Office.

The Court further notes that prior to Arvanetes's deposition and in response to an e-mail from Arvanetes, Dake advised Arvanetes of the language in this Court's order preventing counsel from discussing the case without opposing counsel present. Dake explained that no deposition preparation would occur without Schwartz being present. Again, it does not appear that either Dake or Sabol attempted to engage in any additional communication with Arvanetes. The next communication that occurred, included Arvanetes, Dake, Sabol, and Schwartz, and general deposition topics were covered. After this e-mail, Dake provided Schwartz with the e-mails he had received from Arvanetes. The Government explains that it was unclear if the e-mails had any relevance, as they were seemingly innocuous, but elected to turn them over in an exercise of caution and it was done so that Schwartz was aware of the e-mails in order to prepare for the deposition. *See*, (Doc. 158 at 12.) The Government maintains that Threefingers retains the ability to question Arvanetes about the substance of these e-mails, and any other alleged communications with the Government, at his deposition. (*Id.*) The Court agrees.

Threefingers has neither demonstrated prejudice from the purported acts of Dake and/or Sabol, nor has he shown clear and convincing evidence of prosecutorial misconduct. *See, Williams*, 68 F. 4th at 573; *see also, United States v. Kahre*, 737 F. 3d 554, 574-75 (9th Cir. 2013). While the e-mail communications

that occurred in this matter are not ideal, the Court is satisfied that the parties now fully appreciate and understand the order that is in place and will abide by the same. There is no indication in the record before this Court that either Dake or Sabol injected unfairness into these proceedings or acted in an unethical manner. Accordingly, the request to disqualify Dake and Sabol and implement an ethical screen will also be denied.

Threefingers has not met his burden of establishing disqualification of the AUSA's involved in the case, much less the entire U.S. Attorney's Office for the District of Montana. This is not "the most extraordinary of circumstances" warranting the extreme remedy of blanket disqualification. *Williams*, 68 F. 4th at 573. The motion to disqualify will be denied.

IT IS HEREBY ORDERED that:

1. Threefingers' motion to disqualify counsel (Doc. 154) is DENIED.

2. In light of the ruling on the motion to disqualify, the Government's unopposed motion for extension of time to file response (Doc. 160) is GRANTED. The Government shall file its response to Threefingers' amended §2255 motion on or before **August 7, 2026**.

DATED this 6th day of May, 2026.

Susan P. Watters
United States District Court Judge

11